*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1037**

In re the Marriage of:
Tamara Lyn Renneke,
n/k/a Tamara Lyn Fjoslien, petitioner,
Appellant,

vs.

Dean Glenn Renneke,
Respondent.

**Filed May 9, 2016
Affirmed
Worke, Judge**

Crow Wing County District Court
File No. 18-FA-11-1378

Thomas W. Lies, Waite Park, Minnesota (for appellant)

Lynne Ridgway, St. Cloud, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Worke, Judge; and Johnson, Judge.

## UNPUBLISHED OPINION

**WORKE**, Judge

Appellant-wife argues that the district court's enforcement of the parties' dissolution judgment regarding apportionment of the parties' retirement accounts modified the property division. We affirm.

# FACTS

In March 2011, appellant Tamara Lyn Renneke, n/k/a Tamara Lyn Fjoslien petitioned for dissolution of her marriage to respondent Dean Glenn Renneke. By June 5, 2013, the parties had reached an agreement, which was reflected in their August 21, 2013 judgment and decree.

As part of their settlement, the parties agreed to equally divide their retirement accounts valued as of June 4, 2013, plus an "equal division of gains and losses from that date." The division was to occur within 30 days of entry of the judgment and decree. To divide their interests in their Wisconsin property, and overall settlement of the matter, Fjoslien was to receive an additional "$400,000 of IRA rollover money" from Renneke. The parties agreed to cooperate with executing the terms of the agreement.

Twice in August 2013, Renneke attempted to arrange a meeting with Fjoslien to complete the IRA transfer. Fjoslien did not respond.

On October 16, 2013, Fjoslien's attorney sent the following:

> Please accept this letter as the calculation on the transfer of retirement accounts from [] Renneke to [] Fjoslien:
> Total Retirement Accounts:
> [Renneke's] retirement accounts:
>
> | | |
> |---|---|
> | Schwab IRA rollover | $1,017,362 |
> | Fidelity IRA | $149,565 |
> | Invesco IRA | $18,725 |
> | Thrivent Annuity | $18,231 |
> | **Total** | **$1,203,883** |
>
> [Fjoslien's] retirement accounts:
>
> | | |
> |---|---|
> | American General Life | $12,962 |
> | Schwab IRA | $3,206 |
> | Fidelity Traditional IRA | $75,190 |
> | **Total** | **$91,358** |

The total of both accounts equals $1,295,241, which should be divided equally. As such, [the parties] should each get $647,620.50, and [Fjoslien] should receive an additional $400,000 per the Judgment and Decree which means [Fjoslien] should receive $1,047,620 and [Renneke] should receive $247,620. . . . [Fjoslien] already has the $91,358 in her accounts. [Renneke] should rollover $956,262.50 from his Schwab rollover account to [Fjoslien].

Renneke transferred approximately $956,000 to a money-market account to ensure that the proper amount was available to transfer to Fjoslien. On December 31, 2013, Renneke forwarded an IRA transfer form to Fjoslien with instructions to insert the account number in which she wanted the $956,262.50 deposited and to sign the form, both of which were required to complete the transfer. Fjoslien did not complete the form.

On March 5, 2014, Fjoslien's attorney sent Renneke's attorney the following:

Renneke needs to equalize the [retirement] accounts by transferring $956,262.50 to [Fjoslien]. [Fjoslien] does not need transfer documents. [Renneke] need[s] to transfer the funds. Please provide me with the information of the transfer of the $956,262.50 . . . .

Days later, Renneke's attorney replied: "I sent you . . . the form that [Fjoslien] needs to complete to rollover the IRA. I need to have her account number to transfer the funds . . . . Give me the information and the transfer can be completed immediately." Fjoslien did not provide the necessary information.

On July 18, 2014, Fjoslien's attorney sent Renneke's attorney the following:

$956,262.50 was to transfer to [Fjoslien's] account. All you do is make excuses and the transfer has not occurred. [Fjoslien] averaged a 19.5% increase in her two existing accounts with Schwab during the period of July, 2013 and July, 2014. When one applies the increase to the amount of

3

$956,262.50, it equals $186,417.18. [Fjoslien] should now receive $1,142,733.74.

Fjoslien moved the district court to hold Renneke in contempt for refusing to transfer "$956,262.50 . . . to satisfy the provision of [the] Judgment and Decree." On July 31, 2014, the district court held a hearing on the motion. Renneke's attorney stated that because the parties now disagreed on the amount to be transferred, they agreed to have the district court decide that amount. Renneke was prepared to transfer $956,262.50. Fjoslien testified that she was entitled to an equal division subject to gains and losses. She claimed that because one of her retirement accounts increased 15% since June 2013 to $86,456.89, she was entitled to $1,099,701.80. But Fjoslien agreed that the $400,000 awarded to her above the equal division of the retirement accounts was not subject to gains and losses.

The district court denied Fjoslien's motion to hold Renneke in contempt. Based on the parties' request, the district court found that Renneke should transfer $956,250.50. The district court explained that this was a "fair and reasonable" amount because as recent as March 5, 2014, Fjoslien agreed to that amount. Additionally, the district court found that it was Fjoslien's fault that the transfer did not occur because she ignored Renneke's request for a September 2013 meeting, and "stubborn[ly] refus[ed] to perform acts so simple as providing the [account] number . . . , signing the form, and sending it back to [Renneke's] attorney."

Fjoslien moved for amended findings claiming that she was entitled to retirement account gains and losses, and requested the district court order the parties to disclose their

4

investment-account statements. The district court denied Fjoslien's motion. This appeal follows.

## D E C I S I O N

Fjoslien argues that the district court reopened and impermissibly amended the property division set out in the judgment and decree by designating a transfer amount that did not account for gains and losses of the parties' retirement accounts.

A district court may issue appropriate orders implementing or enforcing the provisions of a dissolution decree. *Erickson v. Erickson*, 452 N.W.2d 253, 255 (Minn. App. 1990). A district court may clarify and construe a divorce judgment so long as it does not change the parties' substantive rights. *Ulrich v. Ulrich*, 400 N.W.2d 213, 218 (Minn. App. 1987). The district court has broad discretion in dissolution property divisions, and will not be overturned absent a clear abuse of that discretion. *Reck v. Reck*, 346 N.W.2d 675, 678 (Minn. App. 1984), *review denied* (Minn. Apr. 25, 1984).

Here, the parties agreed to equally divide their retirement accounts "valued as of June 4, 2013, plus an equal division of gains and losses from that date." Fjoslien was to receive an additional $400,000 above the equal division that was not subject to gains and losses. The parties agreed to cooperate to accomplish the transfer within 30 days of entry of the judgment and decree.

The district court found that the transfer was not accomplished due to Fjoslien— she did not cooperate, as contemplated by the judgment and decree. Because of Fjoslien's actions, Renneke's repeated attempts at completing the transfer went unanswered. The district court also concluded that it was fair to order Renneke to

5

transfer $956,262.50 because Fjoslien agreed on that amount up through March 5, 2014. The district court did not amend the judgment and decree, rather, its order was a manner of implementing or enforcing the judgment and decree.

Fjoslien argues that "[t]he parties would equally divide gains and losses on the investment accounts until . . . September 20, 2013, [30 days after the entry of the judgment and decree]." But Fjoslien did not present this argument to the district court until she moved for amended findings. Therefore, this argument is not properly before this court. *See Allen v. Cent. Motors, Inc.*, 204 Minn. 295, 299, 283 N.W. 490, 492 (1939) (stating that an issue was raised "too late" when first raised in a motion for amended findings). Moreover, there is nothing in the record to show the performance of the accounts.

Fjoslien asserts that she did not present evidence on all of the account balances because it was a hearing solely on the contempt motion. But the relief she sought was twofold. She wanted Renneke found in contempt for failing to transfer funds. And she also wanted him ordered to transfer funds. Because Fjoslien disputed the amount Renneke agreed to transfer, it was an impossible task for the district court to order a transfer of funds without determining the amount of the transfer.

Knowing the relief she sought, Fjoslien should have been prepared to offer evidence to support the figure she believed Renneke was to transfer. But before the hearing she made no effort at discovery of Renneke's retirement-account information. Indeed, at the start of the hearing, Renneke's attorney indicated that, based on the July 18 letter, there appeared to be an issue regarding the amount that was to be transferred. She

6

stated: "But we have agreed . . . that the [district] [c]ourt can fill in the amount that is to be transferred after this hearing." Fjoslien did not disagree with that statement. Fjoslien was afforded a full hearing, but presented little evidence regarding the account activity and current balances. Fjoslien claimed that because she realized an increase of 15% in her Fidelity IRA from June 4, 2013 to July 30, 2014, Renneke should transfer $1,099,701.80 as a result of his failure to pay her in a timely manner. There are several problems with this assertion.

First, Fjoslien has three retirement accounts, yet she provided information for only one. Thus, a complete picture of gains and losses is almost wholly speculative. Second, the district court attributed the parties' failure to accomplish the transfer to Fjoslien's conduct, not to Renneke's failure to offer to pay in a timely manner.

Third, the language in the judgment and decree states that the retirement accounts will be divided equally, valued as of June 4, 2013, plus an equal division of gains and losses from that date. Fjoslien was to receive an additional $400,000, which she acknowledged was not subject to gains and losses. Despite this, Fjoslien asserted that Renneke was to transfer $1,099,701.80 due to a 15% gain. Fjoslien increased the entire $956,262.50 by 15% to reach $1,099,701.80, but the $956,262.50 includes the $400,000, which is not subject to gains or losses.

Finally, Fjoslien claimed that Renneke should transfer $1,099,701.80 based solely on the information she provided regarding a 15% increase in her one account. But she fails to see that an increase in that account balance actually reduces the amount Renneke would transfer. Fjoslien's attorney outlined the equation in his October 16, 2013 letter, in

7

which he valued Renneke's accounts at $1,203,883 and Fjoslien's accounts at $91,358, and stated:

> The total of both accounts equals $1,295,241, which should be divided equally. As such, [the parties] should each get $647,620.50, and [Fjoslien] should receive an additional $400,000 . . . which means [Fjoslien] should receive $1,047,620 and [Renneke] should receive $247,620. . . . [Fjoslien] already has the $91,358 in her accounts. [Renneke] should rollover $956,262.50 . . . .

Fjoslien claims that one of her accounts increased from $75,190.00 to $86,456.89, which would change her total balance to $102,624.89. Following the equation:

> The total of both accounts equals [$1,306,507.89], which should be divided equally. As such, [the parties] should each get [$653,253.94], and [Fjoslien] should receive an additional $400,000 . . . which means [Fjoslien] should receive [$1,053,253.94] and [Renneke] should receive [$253,253.94] . . . . *[Fjoslien] already has the [$102,624.89] in her accounts. [Renneke] should rollover [$950,629.05] . . . .*

(Emphasis added.) Thus, factoring in the new value of Fjoslien's account increases the value of her accounts and reduces the amount that Renneke would owe her.

The district court concluded that it was fair and reasonable to require Renneke to rollover an amount that the parties agreed on for many months. The district court appropriately enforced a provision of the dissolution decree by construing it in a manner that did not change the parties' substantial rights. The district court did not abuse its discretion.

**Affirmed.**

8